**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0369n.06
Filed: June 24, 2008

No. 07-5660

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JASPER ELLIS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BUZZI UNICEM USA, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE:** **BATCHELDER, MOORE, McKEAGUE, Circuit Judges.**

**McKeague, Circuit Judge**. Defendant Buzzi Unicem USA ("Buzzi") employed plaintiff Jasper Ellis until his discharge in February of 2005. After his discharge, Ellis sued, alleging one claim for retaliatory discharge arising from the exercise of his workers' compensation rights and a second claim for intentional infliction of emotional distress ("IIED"). The district court determined that Ellis failed to create a genuine issue of material fact as to both claims and therefore granted summary judgment for Buzzi. Upon review of the applicable law and record, we AFFIRM the district court's grant of summary judgment in favor of Buzzi.

**BACKGROUND**

Buzzi employed Ellis as a welder repairman (formally "Mechanical Maintenance II") in the Buzzi cement manufacturing plant in Chattanooga, Tennessee. As a welder repairman, Ellis was

responsible for welding and patching equipment and structures in the cement plant. Ellis was represented by Local 9-1 of the United Steel Workers of America ("Local 9-1"), and the terms and conditions of his employment were governed by a collective bargaining agreement ("CBA") between Buzzi and Local 9-1.

On March 16, 2004, Ellis suffered a job related injury. Ellis claims he reported the injury to his foreman, who allegedly failed to prepare an injury report. On his own initiative, Ellis was examined by his family doctor, who diagnosed Ellis with a hernia. Ellis then reported the injury to his safety supervisor, who prepared an injury report and referred Ellis to several "company" doctors for treatment. Ellis ultimately was treated by Dr. Zellender, who performed surgery and returned Ellis to work with no restrictions. Buzzi allegedly required plaintiff to obtain a second opinion. On October 27, 2004, Ellis' physician, Dr. Barnett, released Ellis back to work, subject to a permanent 40-pound lifting restriction. Ellis claims

> Buzzi conveniently elected to adopt Dr. Barnett's finding, even though Plaintiff felt he could do his previous job and even though Dr. Zellender's assessment was more accurate. Dr. Zellender's accuracy was later confirmed when Plaintiff was evaluated by a subsequent physician who determined that he did not need to have any restrictions.

Appellant's Br. at 4 (internal citations omitted). However, Ellis has not submitted the affidavit or testimony of any doctor attesting to the above.

Prior to the events at issue, it is undisputed that Buzzi hired an independent consultant to develop job descriptions for the Chattanooga facility. The development of these job descriptions began in late 2002, and they subsequently were implemented in May 2003. Under the Buzzi job

description for Mechanical Maintenance II, a welder repairman required an ability to lift and carry

up to 100 pounds.

According to the applicable CBA, an employee found to be ineligible for a given position

would be eligible for any position for which he had seniority by "bumping" or "rolling" into the

available slot. However, Ellis' permanent 40-pound lifting restriction did not satisfy the job

description for welder repairman or any other union position for which Ellis was qualified and had

seniority. Ellis shared this understanding, and elected to pursue retirement disability benefits:

> Q: As you sit here, Mr. Ellis, can you identify any position within the Bargaining
> Unit that you could perform with a 40-pound lifting restriction?
> [Ellis]: Well, since the Company put restrictions on ever job out here, I don't think
> so.
> Q: Okay. Let me ask you the question again, though. Can you identify any position
> – put aside what the company has or has not done. Can you identify any position
> within the Bargaining Unit that you believe you can perform with a 40-pound lifting
> restriction?
> [Ellis]: No, there's not.
> Q: That is, to your understanding the positions within the Bargaining Unit that exist
> all require regular lifting in excess of your 40-pound lifting restriction; is that
> correct?
> [Ellis]: That's correct.
> Q: In light of the proposed stipulation of the Union with respect to the issue at hand
> today, let me ask you the following. Do you wish to secure disability retirement
> benefits from the Company?
> [Ellis]: Yes.

J.A. 129.

Nonetheless, some job descriptions in the record, *see* J.A. 64-109, have lifting requirements

less than 40-pounds. *See, e.g.,* J.A. 90, 100 ("Small Endloader Operator" and "Track Excavator"

have a 15-pound lifting requirement). However, Ellis did not offer evidence that he was qualified

for these positions or that he had seniority over employees currently occupying these positions and

- 3 -

therefore the district court assumed that Ellis was not qualified for these positions either by training or seniority. J.A. 357-58 n.4. While Ellis now disagrees with the district court's conclusion in this respect, *see* Appellant's Br. at 24 n. 5, we need not address the issue here. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) ("Because issues adverted to on appeal in a perfunctory manner unaccompanied by some effort at developed argument are deemed waived, we need not address the issue." (internal quotations and citations omitted)).[1]

Prior to the resolution of Ellis' claim for disability retirement benefits, Ellis was informed by Larry Miller, president of Local 9-1, that Buzzi would agree to retire Ellis on disability if he waived his right to file suit for workers' compensation benefits. J.A. 230, 261-62. Referring to a meeting between Miller and George Garcia, the Vice President of Manufacturing at Buzzi, Ellis stated:

> Larry Miller met with Mr. Garcia and he called me and told me that they would retire me, give me 20 weeks back pay if I would sign off on workmen's comp. And this was a meeting that Larry Miller had with George [Garcia].

J.A. 262. Ellis declined to waive his right to file for workers' compensation, and instead filed a lawsuit in state court for workers' compensation benefits on January 27, 2005. Additionally, after discussions with Buzzi did not resolve Ellis' demand for retirement disability benefits, Local 9-1 initiated two grievances on Ellis' behalf under CBA. Ellis, represented by Local 9-1, ultimately did

---

[1]In any event, we note that Ellis fails to adduce facts sufficient to create a genuine issue of material fact that he was qualified for these other positions. His current assertion of a physical ability to meet the stated lifting requirements - or even the *actual* lifting requirements as Ellis understands them - does not eliminate his burden to adduce facts that demonstrate he was also otherwise qualified and had the requisite seniority over other employees for these positions.

not prevail in seeking an award of disability retirement benefits.  On March 15, 2006, a hearing was held before an impartial arbitrator.  By award dated June 20, 2006, the arbitrator found that Ellis did not have "sufficient seniority to bump into [a] position" which could accommodate a 40-pound lifting restriction, J.A. 122, and that Ellis was not entitled to retirement disability benefits under the CBA.  J.A. 124.

Buzzi notified Ellis that he was terminated effective February 28, 2005 by letter dated March 10, 2005.  The arbitration award converted Ellis' status to "layoff" rather than full "termination." J.A. 124.  The district court found the distinction to be insubstantial for purposes of a retaliatory discharge claim, J.A. 369, and that finding is not challenged on appeal.  J.A. 369.  The termination letter makes no mention of workers' compensation, but it does center on the issue of Ellis' permanent lifting restriction:

> You were informed, and knew, that there were no positions in the plant that you would qualify for based on [a 40 pound lifting restriction by Dr. Barnett].  You were also informed that your lifting restriction did not qualify you for a disability retirement.

J.A. 61.

Ellis subsequently initiated this litigation, asserting two causes of action: (A) retaliatory discharge from the exercise of his workers' compensation rights and (B) IIED from the denial of retirement disability benefits.  Ellis now seeks monetary damages and re-employment, asserting an ability to work as a welder repairman contradicting his earlier demand for retirement disability benefits.

On Buzzi's motion for summary judgment, the district court determined that Ellis failed to create a genuine issue of material fact on the claims of retaliatory discharge and IIED. Accordingly, on May 16, 2007, the district court granted summary judgment for Buzzi and dismissed Ellis' complaint. This timely appeal followed.

## ANALYSIS

A grant of summary judgment is reviewed *de novo*. *See Connection Distribution Co. v. Keisler*, 505 F.3d 545, 551 (6th Cir. 2007). Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In conducting the summary judgment analysis, the reviewing court must view all inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Retaliatory Discharge Claim

To establish the *prima facie* elements of Tennessee retaliatory discharge, Ellis must show that (1) the plaintiff was an employee of the defendant's at the time of the injury; (2) plaintiff made a claim against the defendant for workers' compensation benefits; (3) defendant terminated plaintiff's employment; and (4) plaintiff's workers' compensation claim was a substantial factor in defendant's decision to terminate plaintiff. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993). The Tennessee Supreme Court explained that:

> The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury. However, proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of showing a legitimate, non-pretextual reason for the employee's discharge.

*Id.* at 558-59. Evidence of a causal relationship may be direct or circumstantial, such as "failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees . . . or evidence tending to show that the stated reason for discharge was false." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006). Finally, if the employer offers a legitimate non-pretextual reason for the discharge, the burden shifts back to the plaintiff to produce additional, compelling evidence of pretext. *See Anderson*, 857 S.W.2d at 559; *Guy v. Mut. Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

At the outset, Ellis challenges the district court's construction of the burden-shifting framework in a retaliatory discharge claim under Tennessee law. Appellant's Br. at 16 ("As the District Court correctly noted, whether Plaintiff is even required to establish pretext is debatable in Tennessee."). However, while Ellis is understood as arguing pretext is *not* required as a matter of law, *see id.*, the district court merely noted an inconsistency as to whether a plaintiff must demonstrate pretext with "overwhelm[ing]" evidence or merely by "making out facts that are sufficient to permit, not mandate, the finder of fact to find pretext." J.A. 372 (quoting *Yates v. Hertz Corp.*, 285 F. Supp. 2d 1104, 1120 (M.D. Tenn. 2003) (internal citations omitted)). The Tennessee

Supreme Court in *Anderson* clearly adopted the burden-shifting framework familiar in federal employment discrimination cases. *See Anderson*, 857 S.W.2d at 558-59. Indeed, published and unpublished decisions of the Tennessee court of appeals have endorsed the applicability of the burden-shifting framework. *See, e.g.*, *Morris v. Columbia Constr. Co.*, 109 S.W.3d 314, 315 (Tenn. Ct. App. 2003) ("He is not able to make out a *prima facie* case of any causal relationship between his worker's compensation claim and his discharge. Because of this, the 'burden shifting' complexities . . . never occur."); *Davis v. Reliance Elec.*, 104 S.W.3d 57, 62-63 (Tenn. Ct. App. 2002) (finding that arbitrator applied the proper burden-shifting framework under *McDonnell Douglas*); *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) ("There seems to be little dispute between the parties as to the applicable law relative to retaliatory discharge claims. Tennessee follows *McDonnell Douglas*."); *Caldwell v. Nissan Motor Mfg. Corp.*, 968 S.W.2d 863, 867 (Tenn. Ct. App. 1997) ("Plaintiff has offered nothing more than his own conception of why he was discharged, plaintiff has shown no evidence contrary to that offered by defendant. This is simply not sufficient to overcome the direct, undisputed reason shown by defendant.") (citation omitted)); *Johnson v. Nissan North America, Inc.*, No. M2006-00046-COA-R3-CV, 2007 WL 551181, at *4 (Tenn. Ct. App. Feb. 22, 2007) ("The employee, however, faces summary dismissal of his claim if he is unable to demonstrate that he could prove the employer's reason for the discharge was pretextual.") (citation omitted); *Frizzell v. Mohawk Indus.*, No. M2004-01598-COA-R3-CV, 2006 WL 1328773, at *3 (Tenn. Ct. App. May 15, 2006) ("If the employer presents a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the employee to prove the employer's explanation is pretextual."); *Jaime v. American Water Heater Co.*,

No. E2005-00907-COA-R3-CV, 2006 WL 176542, at *4 (Tenn. Ct. App. Jan. 24, 2006) ("Because the plaintiff failed to present a *prima facie* case, the 'burden shifting' complexities related to the defendant's proffered legitimate non-pretextual reason never occur.") (citation and quotation marks omitted); *Fuller v. Astec Indus., Inc.,* No. E2000-00721-COA-R3-CV, 2000 WL 1294326, at *3 (Tenn. Ct. App. Sept. 8, 2000) ("We conclude, because plaintiff failed to produce evidence to rebut defendant's legitimate reason for his termination, the Trial Court properly granted summary judgment to the defendant."); *Speakman v. Ada Ferrell Garden Apartments*, No. M1999-00509-COA-R3-CV, 2000 WL 688711, at *6 (Tenn. Ct. App. May 30, 2000) ("[I]f the employee fails to make the required showing of pretext, the employer must prevail."); *Robinson v.Motor Mfg. Corp*., No. M1999-00296-COA-R3-CV, 2000 WL 320677, at *6 (Tenn. Ct. App. March 29, 2000) (same) (citation omitted).

Thus, under Tennessee law, *some* quantum of evidence is required to show pretext, whether it be "overwhelm[ing]" or "sufficient to permit, not mandate, the finder of fact to find pretext." *Yates*, 285 F. Supp. 2d at 1120. Irrespective of the standard applied, Ellis' claim fails.

Applying the elements of retaliatory discharge in *Anderson*, it is undisputed that Ellis was employed by Buzzi at the time of his injury, that he made a claim for workers' compensation in early 2005, and that he was terminated shortly thereafter. As to whether Ellis' workers' compensation claim was a substantial factor in Buzzi's decision to terminate Ellis, the district court concluded that Ellis had established a *prima facie* case with circumstantial evidence, but that he had failed to rebut Buzzi's legitimate reason for terminating Ellis.

On appeal, Ellis assigns error in the district court's grant of summary judgment. Specifically, while Ellis concedes the existence of a legitimate, non-retaliatory basis for his termination, he argues that the district court incorrectly concluded that Ellis failed to offer evidence that tended to prove that the stated reason for his termination was a mere pretext. In support of this contention, Ellis offers the following evidence: (i) Miller's statements to the effect that Buzzi would offer retirement benefits to Ellis if he agreed to waive his right to a workers' compensation claim; (ii) three other employees of Buzzi have been accommodated under a light-duty policy notwithstanding the existence of company-wide lifting requirements; (iii) the existence of a prior existing safety policy at the Chattanooga facility; (iv) Buzzi's knowledge of the workers' compensation suit and its temporal proximity to Ellis' discharge; and (v) Buzzi's alleged negative attitude regarding Ellis' injury and his unfavorable treatment after many years of service. For purposes of clarity, each argument is addressed separately below.

1. Offer of Retirement Disability Benefits in Exchange for Waiver of Rights

On appeal, Ellis argues the district court erred in failing to consider certain direct evidence of pretext. Specifically, Ellis argues that Buzzi's offer of retirement disability benefits in exchange for a waiver of certain rights was direct proof that Buzzi later terminated Ellis *because he filed for workers' compensation*:

> Q: In your complaint you allege – that is, in your complaint in this lawsuit, you allege that you were retaliated against for refusing to forego a workers' compensation claim. Do you still believe that allegation to be true?
> [Ellis]: Yes.

Q: Okay. And what facts, information, or evidence do you have to support that allegation or claim?

[Ellis]: I have where Larry Miller met with Mr. Garcia and he called me and told me that they would retire me, give me 20 weeks back pay if I would sign off on workmen's comp. And this was a meeting that Larry Miller had with George [Garcia].

Q: Are you finished with your answer?

[Ellis]: Yes.

J.A. 261-62. Miller similarly testified about the meeting with Garcia:

Q: Okay. Now, at this point in time had you understood that the Company did not believe that Mr. Ellis was eligible for retirement benefits, that is, disability retirement benefits?

[Miller]: That's what they told us.

Q: Okay. And the Union believed that Mr. Ellis was eligible for disability retirement benefits?

[Miller]: Yes, we did.

* * *

Q: And so you and Mr. Garcia are now talking in an effort to settle the differing positions?

[Miller]: Yes, we were.

* * *

Q: So would it be fair to say, Mr. Miller, that neither Mr. Garcia, nor anybody else in the company ever said they would put Mr. Ellis on disability retirement benefits unless it would be part of a settlement where Mr. Ellis would waive some rights in some other litigation?

[Miller]: That's –

Q: Is that correct?

[Miller]: That's correct.

J.A. 230. We understand Ellis to be contending that the above sworn testimony is, *ipso facto*, evidence of a threat to forgo workers' compensation. However, Ellis' brief mis-characterizes what was an attempt to explore the settlement of a workers' compensation claim contemporaneously with any award of disability retirement benefits. To state the point succinctly, the promise of retirement benefits in exchange for a waiver is not the same as the promise of continued employment in

exchange for a waiver. Ellis has not put forth here, nor to the district court below, any evidence suggesting Buzzi offered *continued employment* in exchange for a waiver. It is also worth noting that, contrary to Ellis' assertions, the district court specifically acknowledged the offer of disability retirement benefits. *See* J.A. 358 ("Plaintiff claims to have been informed by Larry Miller [], president of the Union, that Buzzi would permit Plaintiff to retire on disability if he waived his right to file suit for workers compensation benefits.").

Additionally, in his brief and during oral arguments, Ellis argues that Buzzi threatened Ellis with termination if he exercised his workers' compensation rights. In support of his claim, Ellis points us to Miller's affidavit, taken after and in response to defendant's motion for summary judgment:

> After [Ellis] refused [the offer of full retirement], I was also told that if he did not give up the right to file suit, Ellis would be terminated.

J.A. 212 (affidavit of Miller, sworn and offered April 2, 2007 in support of Ellis' Response to Defendant's Motion for Summary Judgment).

Taking Miller's affidavit as true, we understand Miller to be contending that he was told (presumably by Buzzi through its authorized agents) in the period after the initial offer of disability retirement but before Ellis' was terminated, that Ellis would be terminated for precisely the reason that Tennessee law forbids. Quite inconveniently for Ellis, however, this later assertion lacks even the suggestion of support in the record. To the contrary, Miller testified in his March 15, 2006 deposition that termination was preconditioned on two criteria - Ellis' ineligibility for both

retirement disability benefits and "bumping/rolling" into an available position - having nothing to

do with the exercise of certain rights:

> [Miller]: Well, [Garcia] said [Ellis] had three options, roll, retirement or termination, and he'd like to find something on the other side besides termination where Mr. Ellis could come back to work.
> * * *
> Q: Okay. And if not eligible for retirement and not able to roll, did you also understand that one of the options might be termination?
> [Miller]: I understood it, but I didn't agree with it, and I let him know, you know.
> Q: I'm sorry?
> [Miller]: I let him know I didn't agree with the latter, termination.

J.A. 228.  Moreover, Ellis himself makes no mention of such a direct threat in his affidavit or

deposition testimony, though he would presumably be among the first informed by Miller of just

such a threat.  In his deposition testimony of February 20, 2007, Ellis was asked if he had any further

direct evidence of a retaliatory discharge:

> [Ellis]: I have where Larry Miller met with Mr. Garcia and he called me and told me that they would retire me, give me 20 weeks back pay if I would sign off on workmen's comp.  And this was a meeting that Larry Miller had with George [Garcia].
> Q: Are you finished with your answer?
> [Ellis]: Yes.
> Q: Do you have any other facts, information, or evidence that you believe would support your claim that you were retaliated against by the company for refusing to forgo a workers' compensation claim?
> [Ellis]: Just the testimony of Larry Miller.
> Q: That is, addressing what you just described for us?
> [Ellis]: Yes.
> Q: Do you have any other facts or information that you believe support your claim?
> [Ellis]: No.

J.A. 262.  Accordingly, prior to the motion for summary judgment, Ellis' position was that the offer

of retirement disability benefits in exchange for a waiver was *the only* direct evidence of retaliatory

motive. Miller's subsequent affidavit is therefore an attempt at improperly avoiding summary judgment by creating a dispute where no dispute actually exists. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477 (6th Cir. 2002) ("While the court is required to view the facts in a light most favorable to the nonmoving party, this does not mean that the nonmoving party can create an issue of fact by filing an affidavit with contrary allegations.").

### 2. Similarly Situated Employees

Absent direct evidence of pretext, Ellis can survive summary judgment with "circumstantial evidence in numerous forms, to include . . . discriminatory treatment when compared to similarly situated employees." *Newcomb*, 222 S.W.3d at 391. To be similarly situated, a comparator "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).

Ellis contends that the treatment of three similarly-situated employees is circumstantial evidence of pretext. In support of his argument, Ellis offers evidence of a light-duty policy in place at the Chattanooga facility where he worked – a policy Ellis claims has been applied in prior occasions to allow workers, similarly situated, to remain in employment despite a lifting restriction. Specifically, Ellis notes that three employees – Johnny Ables, Vince Kilgore, and Earl Masters – were allowed to work through lifting restrictions.

However, the district court properly noted that Buzzi offered unrefuted evidence that the comparators were, in fact, *not* similarly situated.[2] J.A. 374. According to Scott Henninger, Buzzi's Production Manager responsible for administering employee workplace restrictions, each of the three employees alleged to be similarly situated had only temporary lifting restrictions. J.A. 269. The existence of temporary, rather than permanent, work restrictions signify "differentiating or mitigating circumstances that [] distinguish . . . their employer's treatment of" their work restrictions. *Mitchell*, 964 F.2d at 583. Furthermore, while one employee (Masters) had a lifting restriction inconsistent with his job description, this was not discovered by Buzzi until long after the current job descriptions were implemented. J.A. 269-70. Moreover, Masters' permanent 35-pound lifting restriction subsequently was changed to a temporary lifting restriction of 20-pounds. J.A. 269.

Tellingly, Ellis does not challenge the fact that all three employees cited above pursued workers' compensation benefits, and in fact two of the employees at one time filed a lawsuit for workers' compensation benefits. J.A. 269. Indeed, Ables applied for and received workers' compensation benefits five times in a span of eight years. J.A. 269. Masters applied for and received workers' compensation benefits for three work-related injuries in a span of six years. *Id.* Both Ables and Masters filed lawsuits relating to their claims for workers' compensation. *Id.* Lastly, Kilgore applied for and received workers' compensation benefits for injuries in 1994 and 1999. *Id.* Yet, none of these employees were terminated for pursuing their rights.

---

[2]In addition, the district court noted that Ellis' evidence of alleged comparators was hearsay, and lacking personal knowledge, neither Ellis nor Miller were competent to speak to those matters. J.A. 374 ("It should be noted that none of these cases are supported by the employees' affidavits; this information is basically hearsay.").

Ellis' claim of pretext is further weakened when compared to the factually similar retaliatory discharge case of *Johnson v. Cargill, Inc.*, 984 S.W.2d 233, 235 (Tenn. Ct. App. 1998). There, as here, the plaintiff sought to demonstrate pretext with the suggestion that a light-duty policy was applied in a discriminatory fashion, based on whether the employee exercised his workers' compensation rights. *Id.* at 235. In support of this claim, the plaintiff in *Johnson* offered evidence of three employees who were permitted to work in "positions that [were] within their physical limitations and capabilities, however limited." *Id.* However, there was no evidence that the three employees cited by plaintiff in *Johnson* were permanently disabled or impaired (plaintiff's own restriction was a permanent 10-pound lifting restriction). *Id.* Additionally, two of the employees filed workers' compensation claims, while there was no evidence as to whether the third employee made a workers' compensation claim. *Id.* The *Johnson* court concluded that "[a]lthough the plaintiff did present evidence that defendant accommodated some workers during recovery, there [was] no evidence that this assistance was anything more than temporary." *Id.* Rather, the injured employees were re-employed at light duty positions only where they would one day be able to perform their original jobs. *Id.*

Ellis makes no effort to distinguish *Johnson*, nor is it even mentioned in his brief. Accordingly, as in *Johnson*, Ellis has not offered evidence of a light duty policy applied in a discriminatory fashion, such as to those employees who waive their right to workers' compensation. Rather, the record indicates a policy applied on prior occasions to injured employees *despite* the fact that they pursued workers' compensation benefits.

3. Prior Existing Safety Policy

- 16 -

Ellis also argues that the existence of a safety policy, and Buzzi's failure to extend it to Ellis, is circumstantial evidence of pretext. While "[a]bsent a contractual arrangement, an employer is under no legal duty to provide an alternative position to a disabled employee," *Johnson*, 984 S.W.2d at 235, circumstantial evidence of pretext can include "the employer's failure to adhere to established company policy." *Newcomb*, 222 S.W.3d at 391.

According to Ellis, "Buzzi had a general edict that employees should not lift heavy loads by themselves, but rather, should ask another employee for assistance." Appellant's Br. at 7. Both Miller and Ellis characterized the safety policy as requiring that "an employee lifting over 50 pounds should seek the assistance of another employee." J.A. 207, 213. In support of his argument, Ellis cites to deposition testimony of Garcia:

> Q: If an individual who works at your plant has an item that is a hundred pounds that needs to be lifted, you want that individual to seek help, whether that help is in the form of another individual to help lift that or whether he has some mechanical hoisting or hydraulic lifting device. Is that correct?
> [Garcia]: Wherever possible, yes.

J.A. 221. Miller, in his arbitration testimony, was asked about the alleged safety policy:

> Q: Are you aware of a plant rule at this facility that says whenever more than 50 pounds is being picked up it must be done by two individuals or some such –
> [Miller]: There's a poster on the wall that says that.

J.A. 233.

The record demonstrates Buzzi's preference that its employees not lift heavy loads when assistance is available - whether in the form of a mechanical device or another employee. These statements do not, however, evidence a policy that an employee *shall not* lift loads in excess of 50-pounds. There is nothing inherently inconsistent with job descriptions that set out the lifting

requirements for a position and Buzzi's stated preference that employees seek help for heavy loads wherever possible. We reject the notion that an employer may not anticipate the burdens of a given position while at the same time seek to mitigate the hazards of a given task wherever possible.

Moreover, it is worth noting that the alleged safety policy has a threshold of 50-pounds; exceeding Ellis' 40-pound lifting restriction in any event. Thus, any such safety policy would not entirely relieve him of his obligation to lift *in excess of* his lifting restriction as a welder repairman. Accordingly, the record does not support the claim that Buzzi failed to extend a prior existing safety policy to Ellis which would have allowed him to return to work.

### 4. Temporal Proximity and Buzzi's Knowledge of the Workers' Compensation Claim

Ellis further contends that the district court erred in either disregarding or improperly weighing certain circumstantial indicia of a retaliatory motive on the part of Buzzi. In particular, Ellis argues that the temporal proximity between the workers' compensation claim and Ellis' firing, as well as Buzzi's knowledge of the workers' compensation claim, constitute circumstantial evidence that the legitimate reason for Ellis' termination was pretextual.

These arguments do nothing to support Ellis' burden of demonstrating Buzzi's legitimate reason for firing Ellis was pretextual. Rather, these arguments merely aid Ellis in meeting his initial burden to make a *prima facie* case for retaliatory discharge. *See Anderson*, 857 S.W.2d at 558 ("The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action . . . ."). But as the district court properly noted, J.A. 368, the defendant may shift the burden of proof to the plaintiff by offering a "legitimate non-pretextual non-retaliatory reason for the discharge." *Anderson*, 857 S.W.2d at 559.

Ellis acknowledges the prior-existing company lifting requirements as the stated cause for his termination, but fails to rebut this showing. *See Anderson*, 857 S.W.2d at 559 ("[P]hysical inability to do the job" constitutes a legitimate reason for discharge.). While Ellis correctly notes that he was terminated within a month after filing his workers' compensation lawsuit, this temporal proximity does not constitute evidence that would prove Buzzi retaliated against Ellis for filing a workers' compensation claim. *See Newcomb*, 222 S.W.3d at 368 (citing *Conaster v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995)) ("[A]n employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a *prima facie* case of retaliation."). Furthermore, an employer's knowledge of a pending workers' compensation claim is not evidence that the employer's stated reason for termination was pretextual. *See Morris*, 109 S.W.3d at 317 ("[Plaintiff] cannot carry his burden by simply proving that he filed a workers' compensation claim that was followed by his termination."). Indeed, the Tennessee Supreme Court in *Conaster* squarely addressed the question of whether temporal proximity is sufficient to sustain a retaliation claim for discharge due to a workers' compensation claim and explained that:

> The employee insists that his discharge only three days after returning to work constitutes a *prima facie* showing that the termination of his employment was in retaliation for the assertion of a workers' compensation claim. That evidence is not sufficient. Even in the quote from Larson's treatise on Workers' Compensation Law relied upon by the employee, proximity in time without evidence of satisfactory job performance does not make a *prima facie* case. 2A Arthur Larson, *The Law of Workmen's Compensation*, § 68.36(c), p. 13-318 (1994).

920 S.W.2d at 648. The dissent's reliance on the Tennessee Supreme Court's later decision in *Allen v. McPhee,* 240 S.W.3d 803, 823 (Tenn. 2007), is misplaced here because the Tennessee Supreme

Court had already decided the issue in *Conaster* and therefore *Allen* is not instructive in this respect. We also reject that Ellis' other allegations in combination with temporal proximity support an inference that retaliation motivated his discharge. Moreover, even if such allegations were sufficient to establish a *prima facie* case, they do nothing to rebut Buzzi's legitimate reason for discharging Ellis under the circumstances of this case and, therefore, Ellis fails to raise a genuine issue of material fact as to pretext.

    5. Buzzi's "Negative Attitude" and "Unfavorable Treatment"

Lastly, Ellis cites Buzzi's alleged "negative attitude about the injury" and the unfavorable nature of Ellis' termination after twenty years of employment as circumstantial evidence of pretext. As articulated in *Newcomb*, a plaintiff can survive summary judgment by presenting "circumstantial evidence in numerous forms, to include . . . the expression of a negative attitude toward an employee's injury." 222 S.W.3d at 391. However, "a plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." *Id.*

Ellis characterizes *Newcomb* as a comparable instance of employer harassment following a work-related injury. However, Ellis mis-characterizes the present record as being similar to the facts in *Newcomb*. In *Newcomb*, the plaintiff offered corroborated evidence that his supervisor, on repeated occasions, verbally harassed the plaintiff about his injuries and his decision to sue his employer for workers' compensation benefits. 222 S.W.3d at 391-92. The court in *Newcomb* recognized this as "circumstantial evidence tending to show that [the defendant's] management had a negative attitude toward [plaintiff's] work-related injuries." *Id.* at 395.

In the present case, by contrast, Ellis does not allege harassment of any kind, and instead suggests that Buzzi's delay in filing an injury report, Buzzi's "forc[ing]" Ellis to see Dr. Barnett for a medical evaluation, and Buzzi's adherence to its job descriptions constitute cumulative evidence of a negative attitude which itself is evidence of pretext. Appellant's Br. at 20-21. Whatever the order of events surrounding the injury report, diagnosis, and treatment, Ellis' "subjective beliefs" and "mere speculation" as to an underlying corporate animosity do not constitute evidence sufficient to withstand summary judgment. Additionally, while Ellis claims to have been later evaluated by a subsequent physician "who determined that [Ellis] did not need to have any restrictions," Ellis has not submitted the affidavit or testimony of any physician. Appellant's Br. at 21. Moreover, Ellis does not challenge Buzzi's authority to promulgate descriptions for Union jobs, and the mere adherence to these job descriptions does not constitute evidence of pretext.

Ellis also cites "[u]nfavorable treatment after the injury" as circumstantial evidence of pretext. J.A. 22. Specifically, Ellis argues that he was "threatened with termination after his injury." *Id.* However, the record does not support this characterization. Rather, the record describes an offer by Buzzi of retirement disability benefits in exchange for a waiver of rights. Additionally, to the extent that Ellis argues a discharge after twenty years is evidence of retaliatory motive, he fails to support this assertion with any authority suggesting that discharge of an employee, by virtue of the length of his employment, is circumstantial evidence of pretext.

In sum, Ellis fails to adduce facts sufficient to raise a genuine issue of material fact as to his retaliatory discharge claim and therefore the district court appropriately granted summary judgment in favor of Buzzi.

**B. IIED**

Ellis next alleges error in the district court's dismissal of his IIED claim. To establish the *prima facie* elements of IIED, a plaintiff must show (1) the conduct complained of is intentional or reckless; (2) the conduct is so outrageous that it is not tolerated by civilized society; and (3) the conduct must have resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622-23 (Tenn. 1997).

In his complaint, Ellis alleges that by "refusing him pay and benefits to which he was rightly entitled," Buzzi caused Ellis "emotional distress coming from [Buzzi 's] desire to prevent and deter other employees from filing for workers compensation that was rightly theirs." J.A. 15-16. In his deposition testimony and his brief on appeal, however, Ellis refocuses his IIED claim for emotional harm relating to his discharge by Buzzi. *See* J.A. 57; Appellant's Br. at 28. Yet, under either theory of liability, Ellis fails to adduce facts sufficient to raise a genuine issue of material fact regarding outrageous conduct or serious mental injury sufficient to survive summary judgment.

1. Ellis Fails to Demonstrate "Outrageous" Conduct

In order to survive summary judgment, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Bain*, 936 S.W.2d at 622-23 (quoting Restatement (Second) of Torts § 46, cmt.d (1965)). In light of this standard, the decision to discharge Ellis and the decision to withhold retirement disability benefits cannot constitute sufficiently outrageous conduct. *See, e.g., Jones v. Tennessee Valley Authority*, 948 F.2d 258, 266 (6th Cir. 1991) (Action by an employer assigning plaintiff to menial tasks, unfairly reprimanding

plaintiff, and denying plaintiff promotions, bonuses and raises did not constitute "outrageous" conduct.). This conclusion is supported by the fact that Ellis' ineligibility for retirement disability benefits was upheld by an independent arbitrator. J.A. 124. Even assuming a court were to find on separate facts that a retaliatory motive was present in the discharge of an employee, that alone is not sufficiently outrageous. *See Jones*, 948 F.2d at 266 (explaining that tortious or illegal conduct, by itself, does not constitute malfeasance so outrageous as to go beyond all bounds of decency).

2. Ellis Fails to Demonstrate Serious Mental Injury

Ellis similarly fails to show Buzzi's conduct resulted in a serious mental injury. In proving a serious mental injury, Ellis must demonstrate more than the "transient and trivial emotional distress [that] is part of the price of living among people." *Miller v. Willbanks*, 8 S.W.3d 607 n.4 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). Additionally, "[a] serious or severe emotional injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996) (citations and quotations omitted). Ellis points to his insomnia and the strain on his marital relationship as evidence of severe emotional injury. Articulating his injury, Ellis stated:

> You know, its – it's a feeling that you put all this time with the company you, you know, they call you out to work, you go out in snow, rain, dust and work for them and they just don't care about you at all. They just throw you out. Oh, you got hurt, we don't need you anymore.

J.A. 47. Upon a review of the record, however, the district court correctly concluded that his "emotional distress does not rise to the level required to show IIED." J.A. 378. Ellis' stated injuries

are not "so severe that no reasonable [person] would be expected to endure it." *Id.* Ellis' claims are far short of the level of injury demanded in *Miller*.

Accordingly, Ellis fails to adduce facts sufficient to raise a genuine issue of material fact as to his IIED claim and therefore the district court appropriately granted summary judgment in favor of Buzzi.

### C. Issue Preclusion and Federal Preemption of Claims

Lastly, we pause to note that Buzzi reasserts its argument made in the district court that Ellis is precluded from pursuing his claims because every fact was argued before the arbitrator, and that his claims are preempted by § 301 of the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). Appellee's Br. at 10 n.1. Because summary judgment is affirmed on other grounds, we need not address these arguments. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (A reviewing court "may affirm on any grounds supported by the record.").

### CONCLUSION

For all the aforementioned reasons, the district court did not err in granting Buzzi's motion for summary judgment on Ellis' claims of retaliatory discharge and IIED. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of Buzzi.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I am writing in dissent because I think that the majority opinion fails to review the grant of summary judgment in accordance with the established Tennessee law that Jasper Ellis ("Ellis") has the burden to prove only that retaliation constituted a "substantial" factor in his discharge. Under the appropriate standard, I believe that Ellis has created a genuine issue of material fact regarding whether Buzzi terminated him in retaliation for his filing of a workers' compensation claim.

In *Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. 1993), the Tennessee Supreme Court held that to establish "a cause of action for discharge in retaliation for asserting a workers' compensation claim," a plaintiff must prove that "the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." *Id.* at 558. The Tennessee Supreme Court explained that the most stringent test applied by other state courts requires plaintiffs to prove that retaliation constitutes the "'sole' or 'exclusive' factor motivating their discharge." *Id.* The "determinative factor" test applied by additional state courts requires an intermediate degree of proof: that plaintiffs show "but for" causation. *Id.* The "substantial factor" test adopted by Tennessee is still more lenient to plaintiffs, requiring only "proof that filing the workers' compensation claim constituted an important or significant motivating factor for the discharge." *Id.*

I believe that, although the majority cites the language of *Anderson*, the majority nonetheless fails to adhere to the "substantial factor" test, which requires a finding on behalf of a plaintiff if retaliation featured significantly, even if not decisively, in an employer's motivations. The majority reviews the evidence produced by Ellis with an eye toward assessing whether it is sufficient to create

a genuine issue of material fact as to whether retaliation constituted the sole or determinative factor motivating Ellis's discharge and not whether it constituted "an important or significant motivating factor." *Id.*

Our inquiry should therefore be whether Ellis has created a genuine issue of material fact that his workers' compensation claim was a substantial factor motivating his discharge. I think that the temporal proximity between Ellis's filing of his workers' compensation claim on January 27, 2005, and his termination less than three weeks later on February 15, in combination with other circumstantial evidence, creates a genuine issue of material fact regarding the significance of retaliation as a factor in Ellis's discharge.

The majority opinion relies on two cases to discount Ellis's temporal proximity argument: *Newcomb v. Kohler Co.*, 222 S.W.3d 368 (Tenn. Ct. App. 2006), and *Morris v. Columbia Construction Co.*, 109 S.W.3d 314 (Tenn. Ct. App. 2003). The logic of these cases does not govern the circumstances of this case. In *Newcomb*, the court stated that mere temporal proximity alone cannot prove retaliation, 222 S.W.3d at 391, but went on to state that the totality of the circumstantial evidence was sufficient to allow a reasonable juror to conclude that the plaintiff's filing of a workers' compensation claim caused his discharge. *Id.* at 391-95. In *Morris*, the plaintiff produced no evidence beyond temporal proximity to show causation. 109 S.W.3d at 317. The instant case is analogous to *Newcomb* and distinguishable from *Morris* in that Ellis has coupled evidence of temporal proximity with other circumstantial evidence supporting an inference that retaliation motivated his discharge.

Furthermore, in the context of the Tennessee Human Rights Act ("THRA"), the Tennessee

Supreme Court has recently held that "a close temporal proximity" between the plaintiff's protected

action and the employer's allegedly retaliatory adverse employment action "is sufficient to allow a

reasonable jury to conclude that [the plaintiff] has established a prima facie case of discrimination."

*Allen v. McPhee*, 240 S.W.3d 803, 823 (Tenn. 2007). That the Tennessee Supreme Court has

recognized temporal proximity as a valid and dispositive form of circumstantial evidence of

retaliation with respect to a plaintiff's prima facie case suggests that that court might also consider

temporal proximity to be persuasive, though not necessarily dispositive, circumstantial evidence

establishing pretext.[3]

---

[3]The majority suggests that our reliance on *Allen* is misplaced in light of the Tennessee Supreme Court's prior decision in *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646 (Tenn. 1995). The holding in *Conatser* that temporal proximity without other evidence of causation cannot establish a prima facie case, *id.* at 648, is not reconcilable with the holding in *Allen* that temporal proximity is sufficient to establish a prima facie case, 240 S.W.3d at 823. We should not resolve this dilemma, however, by ignoring the Tennessee Supreme Court's decision in *Allen*. Close examination of *Allen* reveals that the Tennessee Supreme Court adopted a new position in recognition of a recent doctrinal trend, citing five federal circuit court opinions that all issued after the earlier decision in *Conatser*. The Tennessee Supreme Court explained in *Allen*:

> A majority of circuits have held that proof of close temporal proximity alone can establish causation, at least for purposes of stating a prima facie case. *McGowan v. City of Eufala*, 472 F.3d 736, 744 (10th Cir. 2006); *Treglia* [*v. Town of Manlius*], 313 F.3d [713,] 720 [(2d Cir. 2002)]; *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997); *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996); *but see Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). We adopt the majority rule and hold that close temporal proximity of a complaint and a materially adverse action are sufficient to establish a prima facie case of causation.

*Allen*, 240 S.W.3d at 823. I think the only reasonable conclusion is that *Allen* overturned *Conatser*'s holding regarding temporal proximity.

In addition to the temporal proximity between Ellis's workers' compensation claim and his discharge, Ellis has produced sufficient circumstantial evidence to show that retaliation was a substantial factor motivating his discharge. I agree with the majority that the offer of disability retirement benefits in exchange for a waiver of the right to workers' compensation does not constitute direct evidence. The offer nonetheless serves as circumstantial evidence of Buzzi's reluctance to grant Ellis workers' compensation benefits. Ellis has also produced evidence regarding the prior existence of a safety policy that encouraged employees to obtain assistance when lifting more than fifty pounds. When viewed in the light most favorable to Ellis, this evidence further contributes to the creation of a genuine issue of material fact regarding whether retaliation motivated Ellis's discharge.

I think that Ellis's evidence of temporal proximity, Buzzi's offer of retirement disability benefits in exchange for a waiver of Ellis's workers' compensation rights, and the existence of a prior safety policy are sufficient to create a genuine issue of material fact that Buzzi's proffered nonretaliatory reason for Ellis's discharge is pretextual. "Summary judgment should be granted only when the facts and inferences drawn from those facts permit a reasonable person to reach only one conclusion." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). A reasonable person might reach several different conclusions in this case regarding the role of a retaliatory motive in Ellis's discharge. I would therefore reverse the district court's grant of summary judgment to Buzzi.