**NOT RECOMMENDED FOR PUBLICATION**
File Name: 09a0770n.06

No. 09-5185

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| Jeremy Thayer, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| Tyson Foods, Inc., | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**FILED**
**Dec 08, 2009**
LEONARD GREEN, Clerk

BEFORE:    MERRITT, GIBBONS, and McKEAGUE, Circuit Judges

**MERRITT, Circuit Judge.** Plaintiff Jeremy Thayer claims that his former employer, Tyson Foods, Inc. ("Tyson"), fired him in retaliation for filing a workers' compensation claim. Tyson claims it terminated Thayer for altering a doctor's form stating that his illness was not work related. Thayer appeals the District Court's summary judgment dismissal of his retaliatory discharge claim. The issue before us is whether any reasonable juror could find that Tyson fired Thayer in retaliation for filing a workers' compensation claim. Because Thayer has not pointed to facts sufficient to overcome Tyson's honest belief that Thayer falsified medical documents, we agree with the District Court.

**I.  FACTS**

We adopt the facts found by the District Court as set out below:

At the time the acts alleged in this lawsuit occurred, the Plaintiff was employed at Tyson's chicken processing plant in Union City, Tennessee. In October 2007, he was working as a pallet jack operator in the white meat debone department. On October 22, 2007, he went to the plant's clinic complaining of wheezing and shortness of breath.

The Plaintiff was examined the next day by Grover F. Schleifer, M.D., one of Tyson's workers' compensation panel physicians. Following the examination, the nurse informed him that Dr. Schleifer believed the illness was not work related. Thayer was given two sets of documents by the nurse, one of which he was instructed to keep and the other to be forwarded to his employer. The physician's office retained another copy for its files. The copy of the form contained in Dr. Schleifer's files reflected that Thayer's illness was "not work related."

Upon his return to work, the Plaintiff gave the white (original) and green copies of the form to the nurse at the Tyson clinic. Thayer then returned to work. According to the deposition testimony of Tyson's nurse supervisor, Gayle Blackley, it appeared that the original form had been altered. Vickie Culp, a nurse at Tyson's clinic in Union City, stated under oath that the word "not" in the phrase "not work related" appeared to have been scribbled or smudged out on the original. Although disputed by the Plaintiff, Culp recalled that, when questioned about the marking, Thayer told her Dr. Schleifer had initially thought the illness was not work related and then changed him [sic] mind. According to Culp, the explanation struck her as odd, as it was her understanding the clinic had already received a telephone call from the physician's office advising that the illness was not work related. A few hours after the Plaintiff's return to the facility, the Defendant's human resources department called Thayer in for a meeting, during which employment manager Frankye Williams informed him of the apparent inconsistency between the green and white copies of the form he had provided. Thayer was suspended for three days while Tyson conducted an investigation into the matter. Tyson policy provides that deliberate alteration or falsification of company documents or other misrepresentations can result in termination. A "discipline letter" issued by the Defendant stated that "[o]n Tuesday October 23, 2007 Jeremy turned in paper work [sic] from the work [sic] compensation doctor to the clinic that allegedly appears to be altered. All team members are expected to turn in medical documentation that reflects true and accurate information."

Neither Williams nor Connie Betz, assistant complex human resources manager at the Union City plant, was in charge of administering workers' compensation claims for the Defendant's employees. During the ensuing investigation, Williams interviewed Thayer concerning the forms provided by him to the company's clinic. Williams contacted Dr. Schleifer's office in order to determine whether one of his employees had altered the form. An individual identified as "Nurse Sharon" in Dr. Schleifer's office pulled the physician's copy of the form contained in his files and advised Williams that it did not bear a scribble mark. At Williams'

request, Nurse Sharon faxed to Tyson the form copy from Dr. Schleifer's files as well as her statement regarding the form. The statement read as follows:

> Mr. Thayer presented to the office on Tuesday, October 23rd for evaluation of his breathing difficulties. We were specifically asked to address causation.
>
> The referral and treatment form that was sent with Mr. Thayer was completed at the time of the evaluation. After his examination, the patient was escorted by office staff from the treatment area to the front office – the referral form was still attached to the chart and the chart was in the possession of our office staff. Copies were made from the top sheet of the 4-ply form -- one "good" copy for the patient (as the patient copy is the last page of a 4-ply form and is rarely legible) and another for insurance filing purposes. The white and green copies were folded up and the patient was instructed to turn those in to the nurse's station; the pink patient copy and a Xerox copy were given to the patient for his records. The yellow copy along with the second Xerox was filed in the patient chart.
>
> The patient did not have access to the form before the copies were made, and he did not return to the treatment area after the copies were made to have changes made by the physician or nursing staff. No changes had been made to the form by front-office staff. A copy of the form as it exists in our record is being sent for your reference.

On October 24, 2007, Williams asked the Plaintiff to bring in the pink copy of the form that the doctor's office had given him for his records. Thayer volunteered that he also had in his possession an additional white copy. He provided both to Williams. It is undisputed that neither reflected any marking over the word "not." Tyson terminated Thayer on October 29, 2007, stating that the grounds for the discharge was falsification of medical documentation.

R. 27, Order Granting Summary Judgment, pp. 2-4 (internal citations omitted).

## II. STANDARD OF REVIEW

We will affirm a grant of summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The key inquiry is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## III. DISCUSSION

Tennessee law applies to the substantive issues in this diversity suit. 28 U.S.C. § 1332(a); *See Surles ex rel Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 n.1 (6th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Tennessee common law, Thayer bears the burden of proving the following elements to establish a cause of action for retaliatory discharge based on the filing of a workers' compensation claim: (1) Thayer was employed by Tyson at the time of the alleged injury; (2) Thayer filed a claim for workers' compensation benefits against Tyson; (3) Tyson terminated Thayer; and (4) Thayer's claim for workers' compensation benefits was a substantial factor in Tyson's motivation to terminate Thayer's employment. *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

If Thayer succeeds in showing each of these four elements, he has made out a *prima facie* case of retaliatory discharge. The burden then shifts to Tyson to articulate a legitimate, non-retaliatory reason for the discharge. *Id.* at 559. If Tyson makes such a showing the burden shifts back to Thayer to produce "additional, compelling evidence of pretext" by showing "specific, admissible facts, which realistically challenge the defendant's stated reasons" for its actions. *Ellis v. Buzzi Unicem USA*, 293 F. App'x 365, 368 (6th Cir. 2008); *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986).

Tyson argues that Thayer has failed to satisfy the fourth element – that his workers' compensation claim was a substantial factor in Tyson's motivation to fire him – because he cannot

show causation. "Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury." *Anderson,* 857 S.W.2d at 558-59. To show causation, Thayer relies on the short time between the submission of his workers' compensation claim (October 23, 2007) and his termination (October 29, 2007). For purposes of this case, we assume without deciding that, under Tennessee law, close timing alone can establish causation in a case of retaliatory discharge based on the filing of a workers' compensation claim.[1]

Assuming Thayer has made out a *prima facie* claim, Tyson offers its belief that Thayer had falsified medical documents as a legitimate, non-retaliatory reason for its actions. The burden shifts to Thayer to demonstrate that this stated reason was a pretext for retaliation. *Ellis*, 293 F.App'x at 368. Thayer "must either provide direct evidence that a discriminatory reason more likely motivated the employer, or show indirectly that the employer's explanation is not credible." *Burke v. Wes Morgan Constr., Inc.*, No. 3:02-CV-1187, 2005 WL 2709638, at *8 (M.D. Tenn. Oct. 21, 2005). Thayer may also establish pretext by "showing that the [employer's] reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge."

---

[1]The Tennessee Supreme Court is in the process of reviewing *Kinsler v. Berkline, LLC*, No. E2007-026202-COA-R3-CV, 2008 WL 4735310 at *5 (Tenn. Ct. App. Oct. 27, 2008), *appeal granted* (Apr. 27, 2009) ("[P]roof of close proximity in time between an employee's exercise of a protected right under the workers' compensation statutes and a materially adverse employment action is sufficient to establish a prima facie case of causation."). Because the District Court decided this issue in Thayer's favor and because we find that Thayer's claim fails regardless, we need not wait for this decision.

*Davis v. Reliance Elec.*, 104 S.W.3d 57, 63 (Tenn. Ct. App. 2002), *app. denied* (May 5, 2003) (citation omitted).

Thayer offers as evidence of pretext that Tyson failed to follow its internal policies regarding investigation and termination because (1) Tyson did not complete an Investigation Checklist form; (2) two or more management team members were not present when Thayer was discharged; and (3) the location of the discharge was not pre-approved by the Director of Human Resources Operations. Tyson does not dispute that these policies were not followed regarding Thayer's termination.  The District Court convincingly reasoned that there was no logical connection between any of these relatively inconsequential procedural variances and the cause of Thayer's discharge.

Thayer next offers as evidence of pretext that Tyson had no factual basis for concluding that he falsified the documents and that a reasonable trier of fact could find that Tyson failed to conduct a good faith investigation.  Despite Thayer's arguments to the contrary, the District Court correctly applied an "honest belief" standard to Tyson's stated reason for terminating Thayer.  "An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made.  [Courts] do not require that the decisional process used by the employer be optimal or that it left no stone unturned."  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007), *cert. denied* __ U.S. __, 128 S. Ct. 1657 (Mar. 17, 2008) (internal citations and quotation marks omitted).

The District Court found that Tyson's belief that Thayer had falsified medical records was reasonably based on particularized, undisputed facts: (1) Thayer carried the medical documentation from the doctor's office to Tyson's clinic; (2) the form had a smudge or strike on it that was

questioned by the nurse; (3) Thayer offered no explanation as to why the forms were inconsistent; (4) there was no evidence another individual altered the document; and (5) between 2003 and 2007, Tyson terminated forty employees for falsification of medical documentation, only five of whom had workers' compensation claims. Accordingly, the District Court found that Tyson had an honest belief that Thayer falsified medical records and therefore did not act with retaliatory intent. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 715 (6th Cir. 2007). Because Thayer could not show that Tyson's stated reason for termination was mere pretext for retaliation, the District Court correctly granted Tyson's motion for summary judgment.

Thayer argues for the first time on appeal that Tyson altered Thayer's note in order to frame Thayer by falsifying the document. Thayer claims unconvincingly that the argument was raised below. Thayer now argues that by asserting that he did not alter the note, he *implied* that Tyson must have done it because nobody else had access.

Even if we entertain implied arguments as raised below, Thayer offers no new evidence to support the assertion that an employee at Tyson framed Thayer. "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir.), *cert denied*, 543 U.S. 821 (2004).

Thayer also cannot offer any convincing theory as to why Tyson would fire him in retaliation for making a workers' compensation claim for an illness that was not work related. Unlike nearly all analogous cases, Tyson had no financial motive to fire Thayer. *See, e.g., Kinsler, supra* (plaintiff backed out of workers' compensation settlement); *Federated Rural Elec. Ins. Exchange v. Hill*, No.

M2005-02461-COA-R3-CV, 2007 WL 907717 (Tenn. Ct. App. Mar. 26, 2007) (employer paid over $100,000 in medical benefits for plaintiff's knee injuries); *Jaime v. Am. Water Heater Co.*, No. E2005-00907-COA-R3-CV, 2006 Tenn. App. LEXIS 46 (Tenn. Ct. App. Jan. 24, 2006) (plaintiff had preexisting medical condition); *Morris v. State*, No. M1999-02714-COA-RM-CV, 2002 WL 31247079 (Tenn. Ct. App. Oct. 8, 2002) (dispute over how much workers' compensation plaintiff was entitled for illness).

Thayer offers that, "By terminating [Thayer], Tyson warded off any future claims by Thayer who had shown that he would make such a claim." Appellant's Rep. Br. at 10. There is nothing in the record to indicate that Thayer would make any future claims or had any other medical problems. Moreover, Thayer was, by all accounts, a good worker. There is also no evidence that Tyson has fired any other worker for demonstrating a willingness to file a workers' compensation claim. We find that there is no evidence from which a reasonable factfinder could infer that Tyson was motivated to fire Thayer for any reason other than the one stated: falsifying documents.

Because Thayer has not pled sufficient facts to overcome Tyson's honest belief that he falsified medical documents, we hereby AFFIRM the District Court's order granting summary judgment for Tyson.